## State v. Berry
*[Cite as 5 AOA 31]*

*Case No. 10726*
*Montgomery County, (2nd)*
*Decided July 31, 1990*

*John F. Blake, 3600 Shroyer Road, Kettering, Ohio 45459, Attorney for Plaintiff-Appellee.*

*Michael J. McDonald, Suite 2, Spencer Building, 2240 E. Central Avenue, Miamisburg, Ohio 45342, Attorney for Defendants-Appellants.*

*Per Curiam.*

In this case we are asked to determine the extent to which the affirmative defense of "necessity" applies to justify or excuse acts of criminal trespass committed by Defendants-Appellants when they entered and occupied an abortion clinic. The trial court held that the defense had no appli-cation and limited and excluded evidence and arguments relating to the affirmative defense. Defendants-Appellants now argue that their purposes were relevant to the jury's determination and that the trial court erred in its rulings. We agree with the trial court's determination and will affirm Defendants-Appellants conviction below.

### I.
### *Factual Posture*

Each of the eight Defendants-Appellants was charged in Kettering Municipal Court with a violation of R.C. 2911.21, Criminal Trespass. Because the charges against all eight arose from a common act or occurrence, the cases were consolidated and tried together.

The charges arose from an incident of July 15, 1987, when approximately sixteen persons entered the Women's Medical Center, 1401 East Stroop Road, Kettering, Ohio. They made their way to the second floor of the facility where abortions were performed. While there the group congregated in a hallway and both sat and moved about, talking, protesting abortion and speaking about the religious implications of abortion. Though those who entered the clinic were not violent in their behavior, their presence and activity thereafter disrupted the general business of the facility and impeded the movements of the staff.

Ms. Zdena Bridgeman, Assistant Director of the facility who was in charge of operations that day, identified herself and repeatedly asked each of the sixteen persons to leave, individually, and as a group, on several occasions. They declined to do so. Ms. Bridgeman requested the assistance of the Kettering Police Department, and Sergeant James Kirkman of the Department arrived and warned the group that they were being asked to leave by the management of the facility and that if they did not leave they would be arrested. None of the group made to leave and each indicated his intention to remain. After several hours and further encouragements on the part of Sergeant Kirkman and Ms. Bridgeman to obtain voluntary compliance, additional officers of the Kettering

Police Department arrived and arrested each of the Appellants and took them into custody.

On July 21, 1987, Defendants-Appellants were arraigned in Kettering Municipal Court on charges of Criminal Trespass in violation of R.C. 2911.21.[1] Each entered a plea of Not Guilty and filed a written jury demand. Each also filed a written waiver of counsel and elected to proceed *pro se.* The court accepted the pleas and set the case for jury trial on August 19, 1987.

On the date of trial, the prosecuting attorney filed a motion in limine to limit or prohibit each defendant from offering evidence concerning or arguing that abortion within the first trimester of pregnancy is the taking of a human life and that it was necessary for the defendants to enter upon the property of another to save a human life. The court granted the motion in limine and followed its ruling throughout trial.

The cases were tried together beginning August 19, 1987. The jury could not reach a verdict and a mistrial was declared by the court. The trial court ordered the case reset for trial and requested the Supreme Court of Ohio to appoint another judge to hear the second trial.

Pursuant to the trial court's request, the Supreme Court of Ohio assigned a visiting judge to preside over the second jury trial, which was set for September 29, 1987. Prior to the second trial the judge requested each Defendant to re-execute the waiver of counsel first made on July 21, 1987, which they each did.

The matter was tried before a jury on September 29, 30 and October 1, 1987. The jury returned verdicts of guilty. Each Defendant-Appellant was sentenced to pay a fine of $250 and costs of the case and to serve thirty days incarceration. Twenty-seven days of the incarceration were suspended and each Defendant was placed upon unsupervised probation for a period of two years. Three days of the incarceration were served through jail credit and the only portion of the sentence which has not been executed are payment of the fine and costs and two years probation.

Each Defendant-Appellant has filed a timely notice of appeal. Each has submitted identical briefs raising the same assignment of errors. Consequently, we will consider the eight cases together under the headings below.

## II.
### *Affirmative Defense of Necessity*

Throughout the trial the court abided by and enforced its order in limine prohibiting testimony concerning abortion and the affirmative defense of "necessity" which Defendant-Appellant sought to offer. As a result, the court on numerous occasions limited testimony and excluded evidence of various kinds. We will first consider the applicability of the defense as a general proposition and after that we will address each of the evidentiary considerations affected.

The rationale for the defense of necessity has been explained as: "[U]nder the force of extreme circumstances, conduct which would otherwise constitute a crime is justifiable and not criminal; the actor engages in the conduct out of necessity to prevent a greater harm from occurring." 1 Whartons's Criminal Law, (14 Ed.) Section 88. The Model Penal Code Section 3.02 codifies the defense of necessity and several states have adopted statutory provisions consistent with that provision. Ohio has not done so, and thus any recognition we give the affirmative defense of necessity must derive from common law principles.

The common law elements of the defense of necessity are:

"(1) the harm must be committed under the pressure of physical or natural force, rather than human force;

"(2) the harm sought to be avoided is greater than (or at least equal to) that sought to be prevented by the law defining the offense charged;

"(3) the actor reasonably believes at the moment that his act is necessary and is designed to avoid the greater harm;

"(4) the actor must be without fault in bringing about the situation; and

"(5) the harm threatened must be imminent, leaving no alternative by which to avoid the greater harm. *Necessity as a Defense to a Charge of Criminal Trespass in an Abortion Clinic,* (1978), 48 U. Cin. L.R., 501."

The "greater harm" to which Defendants-Appellants point as justification for their admitted criminal trespass is the act and practice of abortion which was regularly conducted on the second floor of the Women's Medical Center. However, none of the Defendants-Appellants, individually or as a group, took specific action to stop or terminate any particular abortion. As they concede in their brief, they simply "felt that abortion kills babies and that their act of trespass would in some way prevent the killing of those babies." (Brief of Defendants-Appellants at p. 7.) Thus, as in *Cleveland v. Anchorage* (1981), 631 P. 2d 1073, despite Defendants' argument that their actions were "necessary" to prevent abortions, their acts were more appropriately characterized as a general protest, non-violent but disruptive, with the intent

to dramatize conduct which they viewed as harmful.

Courts across the United States have repeatedly ruled that political protests of abortion cannot create a privilege to violate criminal trespass laws under the defense of necessity. Eg. *Buckley v. City of Falls Church* (C.A. Va. 1988) 371 S.E. 2d 827, 828. *Cleveland v. Municipality of Anchorage* (S.C. Alaska 1981) 631 P 2d 1073. *Sigma Reproductive Health Center v. State* (C.A. Md. 1983) 467 A 2d 483, 497. See also, *City of Cleveland v. Egeland* (Cuyahoga Cty. 1986) 26 Ohio App. 3d 83 (protest of nuclear war). These holdings rest on two considerations.

First, when the "harm" sought to be avoided arises from human conduct, such as the practice of abortion, the conduct must be shown to deny or threaten a legally protected interest or impose a legally recognized injury. *People v. Krizka* (1980), 92 Ill. App. 3d 288, 416 N.E. 2d 36. *People v. Stiso* (1981), 93 Ill App. 3d 101, 416 N.E. 2d 1209. Such interests are not restricted to those given express sanction in the law, such as freedom of speech or religious expression. Rather, they include all interests which the community is willing to recognize and which are not specifically denied recognition by the legal system. 2 Robinson, Criminal Law Defenses (1984), Section 124 (B)(1).

Second, the practice of abortion cannot be held to deny or threaten a legally protected interest or impose a legally recognized injury. In Ohio, except in very limited circumstances which Defendants-Appellants have not asserted, abortion is not unlawful. R.C. 2919.12. Abortion has been held to be a legally protected right. *Roe v. Wade* (1973), 410 U.S. 113. *State v. Kruze* (1973), 34 Ohio St. 2d 69. Thus, while abortion is a matter of controversy, the right to pursue the practice of abortion or to have an abortion is yet a practice which the community is willing to recognize and, more pertinent to our inquiry, is an interest which has not been specifically denied recognition by the legal system.

Through judicial decision and legislative determination denying abortion recognition as a harm, the law has preempted the central inquiry of the necessity defense; whether the activity sought to be stopped or the criminal conduct employed to stop it is the "greater harm". By denying abortion classification as a harm the law has determined that the greater harm *per se* is in the criminal conduct. The defense of necessity which has been created by the law may not, therefore, be employed to justify or excuse it.

### A. *Applicability Of The Defense Of Necessity To This Case.*

We concur with the foregoing views, and hold that under the facts and circumstances before us the affirmative defense of necessity is not available to these Defendants Appellants as to the charges of criminal trespass brought against them. The court acted within its authority to exclude evidence and arguments in support of or advancing that defense in presentation of the case. To further judicial economy and avoid confusion, the court may prevent the presentation of matters which have no legal relevance to the issues before it. This power includes the admissibility of evidence and the existence of bona fide issues or defenses. Evid. R. 104, 401, 402, 403. We find that the trial court's various orders limiting and excluding matters relevant to or in support of the necessity defense were proper.

Defendants-Appellants' second assignment of error will be overruled.

### B. *Orders To Quash Subpoenas For Medical Records*

In their third assignment of error Defendants-Appellants allege that the trial court erred in quashing a subpoena for certain records of the Women's Medical Center. Those records included personnel records, job descriptions, ownership records, medical, laboratory, and financial records. Defendants-Appellants argued that those records were relevant and admissible in support of the defense of necessity and the factual question of whether abortions were being done at the Women's Medical Center on the day that they entered the premises.

Having found that the defense of necessity is not applicable in the case, the argument that the records were admissible in support of that defense is without merit. Additionally, whether abortions were being performed on the premises on that date is not relevant. Defendants-Appellants argue that the matter may have been misrepresented to them in the notice to leave given by Ms. Bridgeman. However, whether that representation is true or untrue has no relevance to the charge of criminal trespass and to whether they were there without authority, as contemplated in the statute.

Having found neither purpose for which Defendants-Appellants wish to introduce these records to be relevant, we must find that the trial court did not err in quashing the subpoena for them. Defendants-Appellants' third assignment of error will be overruled.

### C. *Voir Dire of Jurors*

In their fourth assignment of error Defendants-Appellants allege that the trial court erred in sustaining objections to questions posed to

prospective jurors as to whether they belong to any civic organization advocating or supporting abortion or had an affiliation with the church or synagogue.

The scope and extent of voir dire examination of prospective jurors is largely within the discretion of the trial judge. *State v. Conley* (1971), 32 Ohio App. 2d 54. *State v. Ward* (1957), 105 Ohio App. 1. In the exercise of that discretion the "court should not deny reasonable inquiry on any matter relevant to the determinative issues of the case. However, neither question concerned in this assignment of error is relevant to a determinative issue in a case of criminal trespass. Moreover, they contained a potential for prejudice or confusion of the issues and the trial court was well within its authority in denying the right to voir dire prospective jurors concerning them.

The fourth assignment of error will be overruled.

### D. *Scope Of Testimony*

In their sixth and seventh assignment of error Defendants-Appellants raised the same issue, alleging that the trial court erred in excluding testimony as to whether abortions or abortion related procedures were being performed at the facility on the day they entered it. Again, these showings would only serve to support the affirmative defense of necessity which we have found to be inapplicable in the case. The assignments of error will be overruled.

### E. *Instructions To The Jury*

In their tenth assignment of error Defendants-Appellants complain that at certain stages of the pretrial proceedings, the trial, and in its instructions to the jury, the court erred in stating that their reason for entering the Women's Medical Center was not germane, material, or relevant to whether or not they were guilty of the offense of criminal trespass.

Statements made at the pretrial proceedings (Tr. 2, 3 and 10) were not themselves dispositive of any rights or issues and cannot be held to be prejudicial.

Statements made at trial in the course of argument and evidentiary proceedings (Tr 192, 193, 196, 197 and 199) as cited by Defendants-Appellants are consistent with the determination of the trial court, which we have affirmed, that the defense of necessity is not applicable to the criminal charges against these defendants. We find no error in those statements.

In its charge to the jury, the court stated (Tr. 496):

"Now there has been reference in this case to higher authority. I have, I will repeat, what I repeated when it first arose. The reason or motive for the doing of an act is not relevant to the question of whether the alleged offense of criminal trespass as I've just defined it has been or has not been committed. The law does not recognize political, religious, moral convictions or some higher law as justification for the commission of a crime. No matter how good the actor's intention may be. Or the reason for the commission of such a crime. Where an act is criminal good faith, good intentions, or good motive is not a defense."

The witnesses had on a number of occasions stated or argued that their actions were undertaken on the basis for their moral and religious views and because in their opinion the law permitting abortions was superseded by that of a higher authority. Those considerations are, however, encompassed within the defense of necessity, which the court found to be inapplicable in the case. The court may give cautionary instructions Civ. R. 51(C). It did not err in doing so here. The assignment of error will be overruled.

### F. *Recitation Of Evidence*

In their eleventh assignment of error Defendants-Appellants object that the trial court was incorrect when it stated (Tr. 483) that "the evidence was that no abortions were being performed." (Appellants' brief, p. 13). However, that argument does not correctly recite or characterize the court's statement. The court stated:

"Ladies and Gentlemen, as I said before there was no reason for being there with respect to abortions, because there's no evidence that abortions were being performed." (Tr. 483).

The trial court was correct in its statement that the evidence of record failed to support the conclusion that abortions were being performed at the facility on that date. In either case, however, having found the defense of necessity inapplicable to the charges against these Defendants-Appellants, the court was correct in its statement and acted within its discretion in providing this cautionary information to the jury.

Upon the foregoing findings and conclusions, we overrule Defendants-Appellants of error number 2, 3, 4, 6, 7, 10, 11, and 12.

### III.
### *ARRAIGNMENT*

In their first assignment of error Defendants-Appellants allege that when the trial court "rearraigned" them at the pretrial proceeding of September 29, 1988, it erred in refusing to read the charges against them as stated in their indict-

ments and required by Crim R. 10. However, an examination of the record shows that the proceeding of September 29 was not a form of arraignment but, instead, an effort by the trial court to confirm that Defendants-Appellants had knowingly and voluntarily waived their right to counsel. For that reason we see no basis to support the argument advanced and we overrule Defendants-Appellants' first assignment of error.

## IV.
### *ATTORNEY ORDERED TO LEAVE COURTROOM*

In their fifth assignment of error Defendants-Appellants argue that the trial court erred in ordering from the courtroom an attorney who was there as a spectator. They argued that the court's action gave to the jury the impression that the Defendants-Appellants had somehow done something wrong by conferring with the attorney and, further, denied Defendants-Appellants their Sixth Amendment right to counsel.

The record reflects that after the jury was impaneled the court granted a motion to separate witnesses. In the course of ordering separation, the court inquired whether there were any attorneys in the courtroom. Two individuals identified themselves as attorneys and the following colloquy ensued between them and the court (Tr. 185-187):

"Counsel step forward. You step forward too. Both of you. Any other attorneys? Now have any of you consulted with any of these defendants? Yes or no?

"PATRICK WELSH, ESQ: Yes, sir.

"COURT: Okay. You are giving them advice on the side, is that correct?

"PATRICK WELSH, ESQ: In this courtroom, no, Your Honor.

"COURT: Not in this courtroom. On the side I said. Have they consulted with you about the procedure in this case counsel?

"PATRICK WELSH, ESQ: Before today?

"COURT: Yes.

"PATRICK WELSH, ESQ: Yes, sir.

"COURT: If you wish to serve as counsel you may do so, otherwise you are not to remain in this courtroom unless you sit up there at that bench.

"PATRICK WELSH, ESQ: Excuse me?

"COURT: You will not remain in the courtroom unless you sit up there at that bench, if you're gonna continue to give them (*sic*) advise.

"PATRICK WELSH, ESQ: I haven't given them (*sic*) advise today, Your Honor.

"COURT: If you do, I expect you to be at that table. I just want the jury to understand that these people that while they've waived their right to an attorney are consulting with one.

"You sir?

"MS. BERRY: I object.

"COURT: You may object, just want the jury to know.

"LLOYD O'HARA, ESQ: Have I advised anybody or talked to them?

"No, sir.

"COURT: Have they consulted with you at all, sir?

"LLOYD O'HARA, ESQ: I don't know any of them and have had no contact with them.

"COURT: I have no objection and the Court would prefer in fact that they were represented by counsel.

"LLOYD O'HARA, ESQ: I'm a retired lawyer and I just thought it would be interesting.

"COURT: We're delighted to have you.

"LLOYD O'HARA, ESQ: Thank you.

"COURT: Counsel, if you give them any advice, I expect you at that table. Otherwise outside. Thank you."

We see no prejudice to Defendants-Appellants in the trial court's action. The trial court has the responsibility to maintain the order of the proceedings before it. Attorneys are officers of the court and are obliged to cooperate with the court in maintaining that order. Attorney O'Hara disclaimed any role in the proceeding. Attorney Welsh admitted that he offered some counsel and advice to some or all of the Defendants-Appellants concerning the case at some time prior to the day of trial. Obviously, neither attorney sought to function as counsel for any of the parties, each of whom had knowingly and intelligently waived his right to counsel. While that waiver may, under proper circumstances, be withdrawn, the facts before us do not constitute a withdrawal of that waiver.

The trial court was entitled in the course of regulating the proceedings before it to avoid situations in which its officers might cause *pro se* defendants to confuse or prolong the proceedings or to commit error prejudicial to their own case. The court's order to Attorney Welsh was consistent with that objective and within the sound discretion of the trial court. He was not ordered from the courtroom but was given the option of sitting at counsel table, which he apparently declined to do. Any role Defendants-Appellants might wish him to play as their counsel could not be impaired by an order to sit with them in the courtroom. Any role he might play as trial counsel should properly

be discharged from that position. We see no prejudice and the assignment of error will be overruled.

## V.
### CROSS EXAMINATION OF DR. HASKELL

One of the Defendants-Appellants, David Enix, subpoenaed Dr. Martin Haskell in his case in chief. Dr. Haskell was the operator of the Women's Medical Center. At the close of Dr. Haskell's testimony as a witness for Mr. Enix, the prosecutor declined to conduct cross-examination. The trial court then excused the witness from the stand. (Tr. 407).

Defendants-Appellants, other than Enix, object that the trial court denied them the opportunity to cross-examine Dr. Haskell. They rely on the procedure followed by the court and a statement made by the court in the course of Dr. Haskell's examination by Enix. That statement (Tr. 402) took place while Enix was seeking to have photographs introduced through his witness, Dr. Haskell. The court stated:

"If you want these photographs introduced, they'll be introduced through this witness through you. There will be no questions from the other defendants of this witness, this is your case."

We see no error in the trial court's actions. Its statements concerning Dr. Haskell were limited to introduction of photographs, not whether other defendants would have the opportunity to cross-examine him. Further, when Dr. Haskell was dismissed as a witness none of the other Defendants-Appellants objected that they were thereby denied the right to cross-examination. Objection would have avoided the prejudice claimed. The failure to object has waived the right to assign error concerning the matter. *Stores Realty Co. v. Cleveland Board of Building Standards* (1975), 41 Ohio St.," 2d 41. This assignment of error will be overruled.

## VI.
### REFERENCES TO LAW

During his closing argument Defendant-Appellant Enix made a general reference to the decision of the United States Supreme Court in *Roe v. Wade, supra.* (Tr. 483). The trial court ordered him to discontinue such references. (Tr. 484). In their ninth assignment of error Defendants-Appellants argued that the court erred in its order. We do not agree. The function of the jury was limited to determinations of fact, and general references to the rule or wisdom of the Supreme Court in *Roe v. Wade, supra,* were not proper for the jury's consideration. Any instruction or comment on the law given for the benefit of the jury must come from the court, not from the parties. The assignment of error will be overruled.

## VII.
### MANIFEST WEIGHT OF THE EVIDENCE

Defendants-Appellants argue in their twelfth assignment of error that they should have been acquitted of the charges against them because the notice to leave read to them stated that no abortions were being performed in the facility that day while the weight of the evidence shows that the first steps of an abortion procedure was being performed there on that day. The notice was relevant only to the question whether Defendants-Appellants had a right to be in the facility, and whether abortions were being performed at the facility on that occasion or on any other date is not relevant to the charge. To the extent that it involves the defense of "necessity" it is not applicable to the case or to the determinations of the jury. The assignment of error will be overruled.

## VIII.
### CONCLUSION

Having overruled the assignments of error offered by each of the Defendants-Appellants, we find that the judgment and decision of the trial court should be affirmed. It is so ordered.

BROGAN, J., FAIN, J., and GRADY, J., concur.

---

[1] "(A) No person, without privilege to do so, shall . . . (4) Being on the land or premises of another, negligently fail or refuse to leave upon being notified to do so by the owners or occupant, or the agent or servant of either."