[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Jane Marzette was found guilty after a bench trial of criminal trespass, disorderly conduct, and fourth degree misdemeanor disorderly conduct. The trial court imposed a jail sentence, fine and costs on each charge. The trial court suspended the sentence on each charge and the fines and costs on the disorderly conduct and criminal trespass charges, leaving a fine and costs to be paid on the resisting arrest charge.
Marzette advances five assignments of error on appeal. Because these assignments are based on the trial and not on the suppression hearing, we have limited our review to the trial transcript, notwithstanding the City's references to the suppression hearing transcript.
 IT WAS PLAIN ERROR FOR THE COURT TO FIND THE APPELLANT GUILTY OF CRIMINAL TRESPASS WHEN THERE WAS NO EVIDENCE PRESENTED TO ESTABLISH THAT SHE DID NOT HAVE A PRIVILEGE TO REMAIN ON THE PREMISES.
According to the State's witnesses, Marzette brought her sister to the Franciscan Medical Center Emergency Room on November 15, 1997, around 9:30-10:00 p.m. For her own protection and that of others, the sister was placed in a locked room while awaiting treatment. Marzette became upset about her sister, who appears to have been in a state of agitation over being in a locked room, and attempted to remove her sister from the locked room. Hospital personnel told Marzette several times to leave the vicinity of the locked room and stay in the waiting room while her sister was given medical attention. When Marzette failed to depart for the waiting room, she was arrested for criminal trespass.
Marzette is correct that it was the City's burden to show that her remaining in the vicinity of the locked room was "without privilege to do so." R.C.G.O. 133.05(A)(4), (D). Once Marzette delivered her sister to Franciscan Medical Center for emergency medical treatment, it was up to Franciscan Medical Center to determine how best to care for the patient. Marzette has not demonstrated how she was privileged to interfere with Franciscan Medical Center's administration of treatment. Marzette's lack of privilege to remain in the vicinity of the locked room was readily inferable from the evidence.
The first assignment of error is overruled.
 THE TRIAL COURT ERRED IN FINDING THE APPELLANT GUILTY OF CRIMINAL TRESPASS, DISORDERLY CONDUCT AND RESISTING ARREST WHEN SHE ESTABLISHED THE COMMON LAW DEFENSE OF "NECESSITY."
The defense of necessity was not argued in the trial court and accordingly cannot be raised for the first time on appeal. Even were we to consider the defense, we would conclude that the trial court could have reasonably determined that Marzette had failed to establish that her conduct was justified by necessity.
We discussed the affirmative defense of necessity inKettering v. Berry (1990), 57 Ohio App.3d 66 at 67-68:
 The rationale for the defense of necessity has been explained as: "Under the force of extreme circumstances, conduct which would otherwise constitute a crime is justifiable and not criminal; the actor engages in the conduct out of necessity to prevent a greater harm from occurring. * * *" 1 Wharton's Criminal Law (14 Ed. 1978) Section 88. The Model Penal Code (1985), Section 3.02 codifies the defense of necessity and several states have adopted statutory provisions consistent with that provision. Ohio has not done so, and thus any recognition we give the affirmative defense of necessity must derive from common-law principles.
 The common-law elements of the defense of necessity are: (1) the harm must be committed under the pressure of physical or natural force, rather than human force; (2) the harm sought to be avoided is greater than (or at least equal to) that sought to be prevented by the law defining the offense charged; (3) the actor reasonably believes at the moment that this act is necessary and is designed to avoid the greater harm; (4) the actor must be without fault in bringing about the situation; and (5) the harm threatened must be imminent, leaving no alternative by which to avoid the greater harm. Necessity as a Defense to a Charge of Criminal Trespass in an Abortion Clinic (1979), 48 U. Cin. L. Rev. 501.
The record in the case fails to demonstrate that Marzette's sister was in danger of imminent harm. Marzette had brought her to Franciscan Medical Center for treatment because, according to Marzette, "she was very emotional." Marzette also testified that she told Franciscan Medical Center personnel that her sister was claustrophobic and should not be locked in a room. It is beyond dispute that in the minutes leading up to Marzette's arrest, her sister — in the locked room — was in a state of agitation. However, during this time, Marzette's behavior was also delaying the medical intervention for which the sister had been brought to Franciscan Medical Center. Accordingly, the trial court was not presented with an undisputed set of facts that necessarily established the defense of necessity.
The second assignment of error is overruled.
 THE TRIAL COURT ERRED IN FINDING THE APPELLANT GUILTY OF RESISTING ARREST WHEN THERE WAS INSUFFICIENT EVIDENCE PRESENTED AT TRIAL TO ESTABLISH THAT THE SECURITY GUARD WHO ARRESTED THE APPELLANT HAD THE AUTHORITY TO MAKE A WARRANTLESS ARREST FOR A MISDEMEANOR UNDER OHIO LAW.
In our judgment, this assignment of error is undermined by the following, unrefuted testimony of Randy Hill, the Franciscan Medical Center security officer who arrested Marzette for trespass:
 Q. And what are your powers there at the hospital security as far as that goes?
 A. All of the officers are sworn in as special Dayton Police officers and we have the same authority as regular police officers. All our background and all our training we are either ex-military or we are still on a department or retired from a department.
 Q. And you say you identified yourself to the defendant as security?
A. Yes sir.
See also R.C.G.O. 112.180-193, particularly 112.189(B), (D)(1), providing for special police officers, and permitting — without requiring — such officers to carry arms and wear uniforms, and giving such officers the power of arrest.
The third assignment of error is overruled.
 THE TRIAL COURT ERRED IN FINDING THE APPELLANT GUILTY OF RESISTING ARREST WHEN THERE WAS INSUFFICIENT EVIDENCE PRESENTED AT TRIAL TO ESTABLISH THAT THE ARRESTING OFFICER HAD PROBABLE CAUSE TO ARREST THE APPELLANT.
Marzette appears to have been charged with criminal trespass under the following code provisions:
 Section 133.05 Criminal Trespass. (A) No person, without privilege to do so, shall do any of the following:
 (4) Being on the land or premises of another, negligently fail or refuse to leave upon being notified to do so by the owner or occupant, or the agent or servant of either.
 (D) As used in this section, "LAND OR PREMISES" includes any land, building, structure, or place belonging to, controlled by, or in custody of another, and any separate enclosure or room, or portion thereof. (R.C. 2911.21).
She was also charged with resisting her lawful arrest for criminal trespass.
Marzette claims in this assignment that there was no basis to arrest her for criminal trespass.
Security Officer Jeffrey Howly testified that after he was summoned to the vicinity of the locked room, he asked Marzette two times to wait in the waiting room, which she refused to do. He then told her two more times to leave or she would be arrested. Again Marzette refused to go. It was only then that Security Officer Hill arrested her. Officer Hill testified that the emergency room physician had also asked Marzette to wait in the waiting room so she could treat her sister. In our judgment, the evidence amply supported the charge of criminal trespass. It is of no consequence that Marzette was not ordered to leave the hospital itself, but only the vicinity of the locked room. Sec.113.05(D). Hence, Marzette could be convicted of resisting lawful arrest for criminal trespass.
The fourth assignment of error is overruled.
 THE TRIAL COURT ERRED IN FINDING THE APPELLANT GUILTY OF DISORDERLY CONDUCT A FOURTH DEGREE MISDEMEANOR WHEN THERE WAS NO EVIDENCE PRESENTED AT TRIAL TO ESTABLISH THE ARRESTING OFFICER HAD WARNED HER TO CEASE AND DESIST FROM MAKING UNREASONABLE NOISE.
In this assignment, Marzette does not contest the finding of guilty of disorderly conduct, but only that the evidence did not establish fourth degree misdemeanor disorderly conduct, which requires evidence that she persisted in a disorderly conduct "after reasonable warning or request to desist." R.C.G.O.137.01(E).
The City concedes there is no such direct evidence but argues that a reasonable warning or request to desist was inferable from the several requests that Marzette to go to the waiting room.
Implicit in the requests that Marzette go to the waiting room was a request that she cease her offensive behavior that was interfering with medical treatment in the emergency room. Thus, the evidence was sufficient to establish fourth degree misdemeanor disorderly conduct.
The fifth assignment of error is overruled.
The judgment of the trial court will be affirmed.
GRADY, P.J., and FAIN, J., concur.