OPINION
Defendant-appellant Gary Pullen appeals from his conviction and sentence for Criminal Trespassing. Pullen contends that the trial court erred by failing to investigate sufficiently his claim, made just before trial, that his counsel was ineffective. Pullen further contends that his trial counsel was ineffective. Finally, Pullen contends that his conviction for Criminal Trespassing was not supported by sufficient evidence.
We agree with Pullen that the trial court did not sufficiently investigate his claim, made just before the start of trial, that his court-appointed counsel was ineffective. Pullen's claim of ineffective assistance of trial counsel cannot be demonstrated on this record. From our review of the evidence in the record, we conclude that it is sufficient to support Pullen's conviction for Criminal Trespassing.
Because we agree with Pullen that the trial court did not sufficiently investigate his claim that his court-appointed counsel was ineffective, the judgment of the trial court isReversed, and this cause is Remanded for the trial court to make a further investigation into that claim. If, upon remand, the trial court should conclude that Pullen's trial counsel was constitutionally ineffective, it shall order a new trial. Otherwise, the trial court may re-enter the judgment of conviction.
 I
In February, 1998, Pullen received written notice that he would be regarded as a criminal trespasser upon lands and premises owned by the Dayton Metropolitan Housing Authority. That written notice was admitted into evidence in the trial court. It appears that Pullen received a similar notice on March 4, 1998. However, when the City proffered evidence of that notice, the trial court properly excluded it, upon hearsay grounds.
Dayton police officer David House testified that he saw Pullen coming out the front doors of the Helena High Rise, an apartment building owned by the Dayton Metropolitan Housing Authority.Although House testified that he knew that Pullen was on the trespasser list, he nevertheless verified that fact, and then arrested Pullen for Criminal Trespassing.
At the outset of Pullen's trial, the following colloquy occurred:
The Court: Defense ready to proceed?
 Ms. Gorman: I was, Your Honor, but Mr. Pullen wants to make a motion to the court.
 The Defendant: I would like to be represented by another lawyer.
The Court: Why?
 The Defendant: Because there was some motions and there was some other things that my lawyer here was supposed to have before we approached this trial and —
The Court: Such as?
 The Defendant: Such as evidence; as witnesses; and I think it was some other things that was supposed to be —
 The Court: You think there is some other things? Do you have money to hire a lawyer? You want to hire your own attorney?
The Defendant: I don't have the money.
The Court: Well, we don't let you pick and choose.
 The Defendant: I don't have — she's not representing me right.
 The Court: Well, she is representing. The court appointed her to represent you.
 The Defendant: She haven't done — she haven't done what requires me to come in on this trial.
 The Court: We're going to proceed with the trial and you can appeal it if you choose, but we're going to proceed with the trial. I'm not going to give you another attorney just because you want one.
 The Defendant: It's not just that I want one. It's evidence I need to proceed.
 The Court: You're not the attorney. The attorney makes the decision about how to proceed. You may not necessarily agree with it, but the attorney makes these decisions.
 The Defendant: I understand that, but in order, like I say, I haven't done what this officer have accused me of, and she —
 The Court: Everybody pleads not guilty; said they haven't done it. That's the reason they have a trial.
 The Defendant: Exactly. She haven't got the evidence and haven't filed the motions that I have asked her 2 weeks ago, and she have refused that, and I'm not being represented right.
 The Court: Well, we'll proceed with it. If you're not satisfied, you can appeal. You have the right to appeal. We're going to go proceed. I'm not going to appoint you another attorney.
 The Defendant: Okay. Now by that, is there another way of getting back if I'm not able to hire a lawyer; is there another way I can ask for [sic] to be able to go to you all services [sic] and be appointed another lawyer?
 The Court: No. I personally feel the Public Defender's Office does a good job. We're not going to just appoint you an attorney just because you want one. Just because they're not proceeding the way you want them to.
 These are trial decisions that the attorney makes, you know, you don't necessarily have to agree with them. If you want to file, if it doesn't go the way you want it, you want to appeal it later, you can do that, but we're going to proceed with trial this morning.
 The Defendant: I didn't want to proceed with this lawyer.
 The Court: Well, that's not your choice. You know, you don't have a choice. You can't just pick and choose whatever attorney you want.
 The Defendant: But I have already told the court why I want the attorney.
 The Court: Well, I don't think that's reason enough, so we're going to proceed. So have a seat.
Whereupon, the trial commenced.
Following the trial, Pullen was found guilty as charged, and was sentenced accordingly. From his conviction and sentence, Pullen appeals.
 II
Pullen's First Assignment of Error is as follows:
 WHEN THE TRIAL COURT MADE INSUFFICIENT INQUIRY INTO APPELLANT'S REASONS FOR HIS DISSATISFACTION WITH APPOINTED COUNSEL AND FAILED TO APPOINT NEW COUNSEL FOR REASONABLE CAUSE, IT VIOLATED APPELLANT'S RIGHTS PURSUANT TO THE SIXTH AMENDMENT AND THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION.
Pullen contends that the trial court failed to conduct a sufficient inquiry concerning his claim, made just before the commencement of trial, that his court-appointed trial counsel was ineffective. The State recognizes that a trial court has a duty to conduct an inquiry concerning an indigent defendant's claim, before trial, that his court-appointed counsel is ineffective. The State contends, however, that the inquiry may be brief and minimal, citing State v. Prater
(1990), 71 Ohio App.3d 78; State v. King (1995), 104 Ohio App. 434 [104 Ohio App.3d 434]; and State v. Patterson (May 2, 1997), Montgomery App. 15699, unreported. In Patterson, supra, the court referred to a written motion that the defendant had filed, evidently setting forth his grounds for seeking substitution for his court-appointed counsel, and asked the defendant if she had anything she wanted to add to it. When the defendant responded in the negative, the trial court found her reasons, which were evidently set forth in her written motion, to be insufficient. In the other cases cited, Prater and King,
convictions were reversed because the trial court failed to conduct a sufficient inquiry into the defendant's motion to substitute counsel. In King, no inquiry was conducted. However, in Prater, a colloquy between the trial court and defendant, just before the commencement of the trial, was similar to the colloquy in the case before us — the trial court expressed its confidence in the defendant's counsel, and would not listen to defendant's contentions that his counsel had not sufficiently prepared a defense.
In the case before us, the trial court did initially ask the defendant why he wished to substitute counsel. However, the transcript reflects that as the defendant was attempting to identify those things that he believed his trial counsel should have done, the trial court interrupted him, with various versions of the statement that the defendant did not have the right to pick and choose the attorney who would represent him. Accordingly, we follow State v. Deal (1969), 17 Ohio St.2d 17, and hold that the trial court failed to conduct a sufficient inquiry concerning Pullen's claim that his trial counsel had not been effective in preparing his defense. As in Deal, supra, we reverse the judgment of the trial court and remand this cause for an investigation by the trial court concerning Pullen's claims.
The State further contends that even if the trial court erred by failing to conduct a sufficient inquiry concerning Pullen's claims that his trial counsel had insufficiently prepared his defense, that error was harmless in view of the evidence presented at the trial. We disagree. The evidence presented at the trial was shaped, at least in part, by Pullen's trial counsel. Pullen offered no evidence in his defense. The only evidence establishing that he was found on Dayton Metropolitan Housing Authority's premises was offered by Dayton police officer David House. On cross-examination, Pullen established that he had made a complaint against House, not long before the alleged offense, that was being considered by the Internal Affairs division of the Dayton Police Department, and had resulted in House being interviewed by Internal Affairs about a month before the alleged offense. This testimony was offered to show possible bias on the part of the only witness who testified that Pullen was present on DMHA premises. The record does not reflect what witnesses Pullen wanted his trial counsel to locate and to interview, or what Pullen thought the results of an investigation might have disclosed. Under these circumstances, we cannot conclude that ineffectiveness on his trial counsel's part, if ineffectiveness were found by the trial court, would necessarily have been harmless.
Pullen's First Assignment of Error is sustained.
 III
Pullen's Second Assignment of Error is as follows:
 APPELLANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHTS TO A FAIR TRIAL AND TO COMPULSORY PROCESS FOR OBTAINING WITNESSES IN HIS FAVOR THROUGH INEFFECTIVE ASSISTANCE OF COURT-APPOINTED COUNSEL.
In Pullen's Second Assignment of Error, he contends that his trial counsel's failure to investigate, locate witnesses, and subpoena witnesses for trial, amounted to ineffective assistance of counsel. This contention cannot be demonstrated on the present record. Precisely because the trial court did not conduct a sufficient inquiry concerning Pullen's claim of ineffective assistance of counsel, there is nothing in the record to establish that his trial counsel failed to conduct an adequate investigation of the facts, or that there were witnesses who would have been able to give favorable testimony, had they been located and subpoenaed.
Because the record does not portray the error assigned, Pullen's Second Assignment of Error is overruled.
 IV
Pullen's Third Assignment of Error is as follows:
 APPELLANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS WAS VIOLATED WHEN HE WAS CONVICTED IN THE ABSENCE OF SUFFICIENT EVIDENCE PROVING EVERY ELEMENT OF THE OFFENSE WITH WHICH HE WAS CHARGED.
Pullen contends that there was a failure of proof, at trial, that he was not privileged to be upon DMHA's premises. Pullen acknowledges that there is evidence in the record that he was notified, in writing, on February 21, 1998, that he was not allowed on DMHA's premises, but he contends that the State failed to establish that Pullen had not succeeded in overturning this notice by means of an administrative appeal before he was arrested on June 11, 1999.
The State points out that although Pullen made a statement to House at the time of his arrest, he at no point claimed that he was no longer on the "trespass list" because of a successful administrative appeal.
 There was testimony that once a person receives notice that he or she is not allowed on the premises, that person remains on the trespass list for three years, unless there is a successful administrative appeal. In general, when the existence of a state of things is once established by proof, the law presumes that that state of things continues to exist as before until the contrary is shown, or until a different presumption is raised from the nature of the subject in question. Clark v. State (1843), 12 Ohio 43, at 496, footnote a. See, also, 42 Ohio Jurisprudence 3d 396, Evidence and Witnesses § 140, and the cases cited therein. In our view, that principle has application here. The State having offered proof that Pullen had been notified in 1998 that he was not allowed on DMHA's premises, and that the normal life of a notification of this kind is three years, it is reasonable to conclude, in the absence of proof to the contrary, that Pullen was not privileged to be upon DMHA's premises on June 11, 1999.
A contrary conclusion would be similar to rejecting evidence of a criminal conviction, in a case where that would be material, because the State had failed to offer proof that the conviction had not subsequently been reversed by a court of competent jurisdiction, or been the subject of a pardon issued by the officer or officers having the power of pardon. It would be unreasonable to require the State to prove this negative fact.
Finally, Pullen contends that he had a privilege to be upon DMHA's premises, without DMHA's consent, arising under the doctrine of necessity. His argument is that he had to enter upon DMHA's premises in order to help another to obtain gasoline for an automobile, which had run out of gas.
As the State points out, this is the affirmative defense of necessity, which we analyzed in Kettering v. Berry (1990),57 Ohio App.3d 66, and Pullen never asserted this affirmative defense at trial. For that reason, alone, we reject Pullen's attempt to invoke the doctrine of necessity for the first time on appeal.State v. Marzette (April 16, 1999), Montgomery App. No. 17187, unreported. Furthermore, even if we were to consider that defense, based upon Pullen's statement to the arresting police officer, Pullen not having offered any evidence in his own defense, we would not be persuaded that this is a proper case for application of the doctrine. The harm that Pullen allegedly sought to avoid befalling another person, whose name Pullen did not even know, was not about to be committed under the pressure of physical or natural force, and the harm, argued to have been a generalized fear that the stranded motorist might be fallen upon by evildoers, was not "imminent, leaving no alternative by which to avoid clear harm." See, Kettering v. Berry, supra, at 67-68.
Pullen's Third Assignment of Error is overruled.
 V
Pullen's First Assignment of Error having been sustained, and his other assignments of errors having been overruled, the judgment of the trial court is Reversed, and this cause Remanded
to the trial court to conduct an inquiry concerning Pullen's claim that his court-appointed trial counsel was constitutionally ineffective. If the trial court, after conducting the inquiry, concludes that Pullen's trial counsel was constitutionally ineffective, it shall order a new trial; otherwise, it shall re-enter a judgment of conviction, including an appropriate sentence. In either event, if the trial court should determine that a more severe sentence is appropriate, it is cautioned to follow the principles set forth in North Carolina v. Pierce
(1969), 395 U.S. 711, pertaining to the imposition of a harsher sentence following a partially successful appeal.
WOLFF and YOUNG, JJ., concur.