CITY OF CINCINNATI, Appellee,

v.

FLANNERY et al., Appellants.

[Cite as *Cincinnati v. Flannery*, 176 Ohio App.3d 181, 2008-Ohio-1437.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–070248, C–070249, C–070250 and C–070251.

Decided March 28, 2008.

Julia L. McNeil, City Solicitor, Ernest F. McAdams Jr., City Prosecutor, and Jay G. Littner, Assistant City Prosecutor, for appellee.

William R. Gallagher, Sarah E. Moorhouse, Ravert J. Clark, and Scott Ryan Nazzarine, for appellants.

HENDON, Judge.

{¶ 1} Appellants were war protestors. Each refused to leave United States Congressman Steve Chabot's Cincinnati office more than two hours after it had been closed to the public on the grounds that they wanted Chabot to sign the "Declaration of Peace," a document expressing support for a speedy end to the war in Iraq. Chabot was in Washington, D.C., at the time.

{¶ 2} Before calling the police to forcibly remove the protestors, a member of Chabot's staff warned the group that the office closed to the public at 5:00 p.m. and asked them to leave several times. The police arrived around 8:00 p.m. and arrested the protestors.

{¶ 3} Following a jury trial, each was found guilty of one count of criminal trespass. The trial court sentenced each appellant to one day in jail, with credit for time served, 20 hours of community service, and six months' community control. This appeal followed.

## State of the Evidence

{¶ 4} In their first and fifth assignments of error, appellants assert that their convictions were against the weight and sufficiency of the evidence. They were not.

{¶ 5} The criminal-trespass statute provides, "No person, without privilege to do so, shall * * * knowingly enter or remain on the land or premises of another."[1] Appellants assert that the state failed to prove a lack of privilege.[2] "Privilege" is defined as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity."[3]

{¶ 6} Appellants specifically assert that they were privileged to remain in Chabot's office out of "necessity" because they were attempting to end the war in Iraq. "Necessity" excuses a criminal act where the harm that would result from compliance with a law is greater, or at least equal to, the harm that would result from violating that law.[4] Where the harm sought to be avoided is created by human conduct, as in this case, that harm must be recognized as illegal. Moral objection to human conduct does not suffice.[5]

{¶ 7} The state presented evidence that the protestors had remained in Chabot's office after it had closed to the public because they were morally

---

1. R.C. 2911.21(A)(1).

2. See *State v. Elstun,* 1st Dist. No. C–10403, 2002 WL 988067; *State v. Newell* (1994), 93 Ohio App.3d 609, 611, 639 N.E.2d 513.

3. R.C. 2901.01(A)(12).

4. See *Columbus v. Spingola* (2001), 144 Ohio App.3d 76, 83, 759 N.E.2d 473.

5. See *Kettering v. Berry* (1990), 57 Ohio App.3d 66, 68–69, 567 N.E.2d 316; *Akron v. Detwiler* (July 5, 1990), 9th Dist. No. 14385, 1990 WL 95683. Cf. *Fairfield Commons Condominium Assn. v. Stasa* (1985), 30 Ohio App.3d 11, 22, 30 OBR 49, 506 N.E.2d 237; *State v. Ratliff* (June 20, 1991), 4th Dist. No. 1873, 1991 WL 110257 (holding that economic need does not create a necessity defense to charges of grand theft).

opposed to the war and believed that they could hasten its end. But the harm the protestors sought to avoid was not a "legal" harm because the war was not shown to be illegal. We therefore hold that the evidence was sufficient to support the protestor's convictions.[6] We also hold that the convictions were not against the weight of the evidence.[7] Even if we accept the protestors' belief that their actions were justified, the sincerity of this belief did not create a privilege to engage in otherwise criminal conduct.[8] These assignments of error are overruled.

## Public Trial vs. Overcrowded Courtroom

{¶ 8} In their second assignment of error, appellants claim that they were denied their constitutional rights to a public trial when the trial court closed the courtroom. This argument has no merit.

{¶ 9} Defense counsel objected to the fact that four members of the public could not enter the courtroom during voir dire. The trial court responded that the number of people in the courtroom would have exceeded the capacity set by the fire code if these four entered, and it denied them entrance. The record does not affirmatively demonstrate, as appellants seem to argue, that the courtroom was completely closed to *all* members of the public. We therefore find *State v. Jones*[9] to be controlling. In that case, two members of the public could not attend the defendant's trial because of limited seating in the courtroom. This court held that the right to a public trial does not include the right to have every interested person present, especially when a few members of the public are excluded due to safety regulations. This case presents a similar scenario. We hold that the courtroom was not "closed" in a constitutional sense and overrule appellants' second assignment of error.

## Privilege and Necessity

{¶ 10} In their third assignment of error, appellants contend that the jury was not properly instructed on privilege and necessity. Appellants objected to the instructions (1) that necessity could not exist where the harm sought to be avoided by a criminal act "arises from human conduct such as governmental

---

6. See *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

7. See *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541; *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

8. See *Berry,* supra; *Detwiler,* supra; and *Fairfield Commons Condominium Assn.,* supra.

9. (Dec. 17, 1999), 1st Dist. No. C–980294, 1999 WL 1203796.

policy" and (2) that the "exercise of a moral judgment based upon individual religious or philosophical standards" does not create a privilege.

{¶ 11} Whether jury instructions correctly state the law is a question of law that we review de novo.[10] Here, the trial court based its instructions on language from *Kettering v. Berry*,[11] a criminal-trespass case involving abortion protestors and a claim of necessity. In Berry, the court determined that a defendant's moral conviction that abortion killed babies could not serve as the basis for a "necessity" to trespass because abortion was not illegal. Berry did not explicitly state that "government policy" could not form the basis for a claim of necessity. But the trial court's interpretation of Berry was reasonable. Berry's central holding was that the harm sought to be avoided in a case of "necessity" must be a legally recognized harm, where that harm has been created by human conduct. We therefore hold that the challenged jury instructions were proper statements of the law. The third assignment of error is overruled.

### Trial Tax?

{¶ 12} In their fourth assignment of error, appellants claim that their sentences were unjust because they were more severe than that of another protestor who had entered a no-contest plea to the charge of criminal trespass. Appellants assert that they suffered a "trial tax." But the other protestor's judgment of conviction is not a part of this record on appeal. And without all portions of the record necessary to resolve the assigned error, we presume the regularity of the proceedings below.[12] We overrule appellants' fourth assignment of error.

{¶ 13} The judgments of the trial court are affirmed.

*Judgments affirmed.*

PAINTER, P.J., and CUNNINGHAM, J., concur.

---

**10.** See *State v. Calderon*, 10th Dist. No. 05AP–1151, 2007-Ohio-377, 2007 WL 259251, at ¶ 55; *Burns v. Prudential Secs., Inc.*, 167 Ohio App.3d 809, 2006-Ohio-3550, 857 N.E.2d 621, at ¶ 41.

**11.** See *Berry*, supra.

**12.** *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 15 O.O.3d 218, 400 N.E.2d 384.