**The STATE of Ohio, Appellee,**

v.

**JANSON, Appellant.**

[Cite as *State v. Janson,* 183 Ohio App.3d 377, 2009-Ohio-3256.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–080906.

Decided July 2, 2009.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Tanner B. McFall, Assistant Prosecuting Attorney, for appellee.

Michael Janson, pro se.

DINKELACKER, Judge.

{¶ 1} Defendant-appellant, Michael Janson, appeals his conviction for criminal trespassing under R.C. 2911.21(A)(2). We find no merit in his arguments, and we affirm the trial court's judgment.

{¶ 2} Evidence presented during a bench trial showed that Jeff Wetterer lived next door to a house that was unoccupied and was soon to be auctioned in a foreclosure sale. He saw someone "slide into a window" of the house from a ladder leaned against the window.

{¶ 3} Wetterer originally thought the person was his former neighbor. But when he saw that the car in the driveway was not his neighbor's, he shouted into the window, "Who's ever in here, you need to get out."

{¶ 4} Five minutes later, a man, later identified as Janson, came out of the house and asked Wetterer "what his problem was." Wetterer told him, "You are my problem. I just saw you break into a house that's not yours." He told Janson three or four times to leave or he would call the police. Wetterer testified that Janson ignored him and went toward the back of house. So Wetterer called the Hamilton County Sheriff's Office.

{¶ 5} John Priest, a Hamilton County Deputy Sheriff, responded to the call. When he arrived, he saw Janson standing against his car, which was parked in the driveway. Janson told Deputy Priest that he was a realtor and was looking at the house for a client. After repeated inquiry as to the identity of his client, Janson finally stated that the client was his mother.

{¶ 6} Deputy Priest testified that the property had been under foreclosure, and that the sheriff's office had intended to sell it at auction. To Deputy Priest's

knowledge, Janson did not have permission to inspect the house. He did not have keys to get into the house, and no lock box had been placed there to provide keys for access to the house. Janson did not tell Deputy Priest that he had permission to be on the property.

{¶ 7} Janson testified in his own defense. He explained that he was a realtor specializing in foreclosed properties. He said that on the date in question, his mother, whom he had been helping to purchase foreclosed property, had called him and told him about the property. He "stopped by to look at it from the outside." He stated, "I do not deny that. But I am perfectly within my right to do so. No one had ever told me not to do so in the State of Ohio." He testified that, as far as he knew, a person had to be "verbally told not to go on a piece of property before you are trespassing."

{¶ 8} He stated that when he arrived to look at the property, he saw a ladder leaning against the house and climbed up it to look in an open window. He testified that the house was vacant and that he had known that it would be sold in foreclosure in two days. He stuck his head in the window, and when he heard the neighbor yelling, he came down the ladder. He told the neighbor that he was within his rights to be on the property. He indicated that he had not seen any signs barring trespassing. When the neighbor called the police, he waited for a police officer to come. He did acknowledge, though, that no one had given him permission to climb up the ladder to look in the window.

{¶ 9} In his pro se brief, Janson does not specifically delineate his assignments of error, as required by App.R. 16(A). However, in the interests of justice, we address what we construe his assignments of error to be.[1] We construe one assignment of error to be that the evidence was insufficient to support the conviction, and we find that it has no merit.

{¶ 10} R.C. 2911.21(A)(2) provides that "[n]o person, without privilege to do so, shall * * * [k]nowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes, or hours, when the offender knows the offender is in violation of any such restriction or is reckless in that regard * * *." "Privilege" means "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity."[2]

{¶ 11} Janson argues that the evidence was insufficient to support the conviction because the state failed to produce the actual owner of the property as

---

1. See *State v. Cooper*, 1st Dist. No. C–030921, 2004-Ohio-6428, 2004 WL 2757193.

2. R.C. 2901.01(A)(12).

a witness. He argues that "[t]he state without representation of the owner does not have the right to arrest, charge, and convict someone that the owner of the private property may have granted permission." This argument is incorrect.

{¶ 12} First, the argument ignores that Janson admitted that he did not have permission to climb up the ladder and look in the window. Further, trespass is an invasion of the possessory interest in the property, not an invasion of title.[3] R.C. 2911.21(E) states that " 'land or premises' includes any land, building, structure, or place belonging to, controlled by, or in custody of another, and any separate enclosure or room, or portion thereof."

{¶ 13} Thus, the state was not required to present the testimony of the actual owner. It had to prove that Janson had no privilege to be on the property.[4] R.C. 2911.21(B) states that "[i]t is no defense to a charge under this section that the land or premises involved was owned, controlled, or in the custody of a public agency."

{¶ 14} In this case, the evidence at trial showed that the Hamilton County Sheriff's Office had control of the property for the purpose of conducting the foreclosure sale and could restrict who could enter the property. The evidence also showed that the sheriff's office had not given Janson the right to enter the property. As a realtor who specialized in foreclosures, Janson could have arranged a legitimate viewing of the property without the necessity of climbing up a ladder and looking in a window without any kind of authorization.

{¶ 15} Janson cites various civil cases for the proposition that being a realtor gave him a privilege to go onto the property. He argues that because no one had told him not to enter the property, no signs had been posted, and he had believed that he could be on the property, he should not have been convicted of criminal trespassing. We disagree.

{¶ 16} No requirement exists that "no trespassing" signs be posted on property, or that the person in control or possession of property notify everyone in the world that they are not welcome to come onto the property.[5] As a realtor, Janson might have been able to arrange an inspection of the property, but he did not. He simply went onto the property of his own accord and took it upon himself to climb up a ladder and enter the house through a window. Even if we

3. *State v. Dias* (Dec. 10, 1997), 9th Dist. No. 2647–M, 1997 WL 778849; *Mansfield v. Reynolds* (July 30, 1997), 5th Dist. Nos. 96CA89 and 96CA91; *Warren v. Smith* (Nov. 30, 1990), 11th Dist. No. 89–T–4330, 1990 WL 187887; *State v. Herder* (1979), 65 Ohio App.2d 70, 19 O.O.3d 47, 415 N.E.2d 1000.

4. *State v. Newell* (1994), 93 Ohio App.3d 609, 639 N.E.2d 513.

5. *State v. Williams* (Sept. 18, 1998), 1st Dist. No. C–970994, 1998 WL 636987.

were to accept his claim that he believed his actions were justified, such a belief does not create a privilege to engage in otherwise criminal conduct.[6]

{¶ 17} Our review of the record shows that a rational trier of fact, after viewing the evidence in a light most favorable to the prosecution, could have found that the state had proved beyond a reasonable doubt all the elements of criminal trespassing under R.C. 2911.21(A)(2). Therefore the evidence was sufficient to support his conviction.[7]

{¶ 18} Janson's arguments could also be construed as an assignment of error that his conviction was against the manifest weight of the evidence. The concepts of weight and sufficiency are different and involve different standards of review. The evidence is insufficient to support a conviction if a complete failure of proof by the prosecution occurs. But when the evidence is sufficient to support a conviction, an appellate court may still reverse the conviction as being against the manifest weight of the evidence.[8]

{¶ 19} After reviewing the evidence, we cannot conclude that the trier of fact lost its way and created such a manifest miscarriage of justice that we must reverse Janson's conviction and order a new trial. Therefore, his conviction was not against the manifest weight of the evidence.[9]

{¶ 20} The dissent grossly mischaracterizes the evidence provided in the record when it states that "he stopped there and peeked in a window." He did not peek in anything. Janson physically went into the house and was in the house for approximately five minutes according to the testimony of Jeff Wetterer.

{¶ 21} The dissent is correct when it states, "Janson was no burglar." He was charged with and convicted of criminal trespassing, not burglary.

{¶ 22} Finally, if we were to follow the dissent's interpretation of the law and condone Janson's actions, after he admitted that he had no permission or privilege to go into the house, we would declare open season for any member of the public to enter or remain on property involved in the foreclosure process, at his whim.

{¶ 23} To require as a matter of law personal notification that one is not allowed on certain property, as Janson urges, or to require "no trespassing" signs posted on real property where the owner does not want trespassers, would be

---

6. *Cincinnati v. Flannery*, 176 Ohio App.3d 181, 2008-Ohio-1437, 891 N.E.2d 775.

7. See *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492; *Flannery,* supra.

8. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541; *State v. Russ,* 1st Dist. No. C–050797, 2006-Ohio-6824, 2006 WL 3759556.

9. *Thompkins,* supra; *Flannery,* supra.

inappropriate and nonsensical. Does the house for sale down the street from you have a "no trespassing" sign on it? If the owner is not living there, is it legal to put a ladder up to a window and go inside? Of course not.

{¶ 24} Janson is guilty of the crime of criminal trespassing and nothing more.

{¶ 25} We overrule Janson's assignments of error, as we construe them to be, and affirm his conviction.

Judgment affirmed.

SUNDERMANN, J., concurs.

PAINTER, P.J., dissents.

PAINTER, Presiding Judge, dissenting.

{¶ 26} Evidently being short on criminals, we are now reduced to convicting realtors for looking at foreclosed houses.

{¶ 27} Janson, a licensed realtor specializing in foreclosed property, was looking at a foreclosed and abandoned house. It was to be sold by the sheriff. The defaulting owners had vamoosed. Who knows if it were even possible to get permission to look at the house. So he stopped there and peeked in the window (according to his testimony), using a ladder that was leaning against the house. For this he was arrested, taken to the hoosegow, presumably in irons, and made to post bail. He was then made a convicted criminal.

{¶ 28} Janson was no burglar. When the neighbor called the law, he waited for the officer to arrive. Where was the crime?

{¶ 29} Another problem with this case—in addition to the fact that it is preposterous—is that Janson is simply not guilty of what he was charged with.

{¶ 30} The majority quotes R.C. 2911.21 correctly: "(A) No person, without privilege to do so, shall do any of the following: * * * (2) Knowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes, or hours, when the offender knows the offender is in violation of any such restriction or is reckless in that regard * * *."

{¶ 31} This section "covers the situation in which the land or premises involved are subject to rules on access or use, and the offender knows or has reasonable cause to believe he is in violation of the rules." [10] The section applies when property is sometimes open to the public—a park, a store—but also sometimes closed. That is why we see signs telling us when a park is closed. What were the "rules" here? There were no signs or warnings. And "[t]he duty to

---

**10.** R.C. 2911.21, 1973 Legislative Service Commission Commentary.

communicate restrictions on the use of land or a building is on the owner or occupier of the land or building."[11] This section simply does not apply to this case.

{¶ 32} It would be more reasonable to assume that the owners of the house, having defaulted on the mortgage, would have been more than amenable to a realtor checking the house out with a view to bidding on it—the higher the bid, the less the defaulting owners owe. If necessary, I would hold that a licensed realtor has an implied privilege to look at vacant foreclosed property in the absence of any visible restriction. But that is not even necessary here, since the law in question doesn't prohibit what Janson did anyway.

{¶ 33} The charging document, captioned "2911.21(A)(2) Criminal Trespass" actually charged Janson with trespassing on the property of the *Sheriff*: "Michael Janson, on or about 5-21-08 in Hamilton County, State of Ohio, did, without privilege to do so, knowingly enter on the premises of Hamilton County Sheriff's Office, located at 6268 Salem Rd., the use of which is lawfully restricted to certain persons, purposes, modes, or hours, when Michael Janson knew he is in violation of such restriction or is reckless in that regard, contrary to and in violation of Section 2911.21 of the Revised Code of Ohio, a misdemeanor of the fourth degree." The way the complaint reads, the sheriff is located at 6268 Salem Rd.

{¶ 34} The majority's assertion that the trial court "could have found that the state had proved beyond a reasonable doubt all the elements of criminal trespassing under R.C. 2911.21(A)(2)" is bizarre, in that Janson quite obviously was not on any land "the use of which [was] lawfully restricted to certain persons, purposes, modes, or hours." The majority completely ignores that Janson was charged with, and convicted of, the wrong section.

{¶ 35} Perhaps Janson's conduct could be shoehorned into another section of the prohibition against criminal trespass. Perhaps R.C. 2911.21(A)(1) might cover the situation—as if it need be covered. Even the cases cited by the majority as precedent involve *that* section, so they are of no value in this case. There are no cases where someone in Janson's position was convicted under *this* section, because there could, legally, be none.

{¶ 36} And the old "we would declare open season for any member of the public to enter or remain on property involved in the foreclosure process, at his whim," is not only untrue (how easy is it to put up a sign), but irrelevant in this case.

---

11. *State v. McMechan* (1988), 48 Ohio App.3d 261, 263, 549 N.E.2d 211, quoted in *State v. Kilgore* (June 16, 2000), 2d Dist. No. 17880, 2000 WL 770530.

{¶ 37} This case involves a licensed realtor. Are we afraid of rogue realtors ranging about the county looking at property? So afraid that we convict—even under the wrong law—people who did nothing wrong?

{¶ 38} Maybe the neighbor—who testified that he had cut the grass on the vacant property without anyone's permission—should be prosecuted too? He "trespassed" as much as Janson did.

{¶ 39} Someone should have had the common sense to dismiss this case before it came to trial. Failing that, the trial judge should have thrown it out. Failing that, this court should do the right thing. But all failed. And a 52-year-old law-abiding citizen is dragged through the court system and made a convict. Michael Janson must feel like Jean Valjean—except that Valjean actually committed a crime.

{¶ 40} Janson is not guilty of a crime. His misfortune is that he lives in a county where he would be convicted anyway.