[Cite as *State v. Strietelmeier*, 2022-Ohio-2370.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210409 |
| | | TRIAL NO. C-20CRB-18275 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| BRYAN STRIETELMEIER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: July 8, 2022

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellant.

**BERGERON, Judge.**

{¶1}    A jury convicted defendant-appellant Bryan Strietelmeier of criminal trespass after he startled the neighborhood by aggressively ringing doorbells and lurking about people's yards in the middle of the night.  Not once, but twice.  He now appeals that conviction on the ground that it runs counter to the manifest weight of the evidence.  With credibility decisions entrusted to the jury, we cannot say on this record that the jury clearly lost its way in finding Mr. Strietelmeier guilty, and we accordingly affirm the judgment below.

I.

{¶2}    Well past midnight on September 23, 2020, Rhonda Mapes' doorbell began ringing.  Not expecting company at such a late hour, Ms. Mapes peered out the door and saw a man she did not recognize.  When the man continued to ring the bell for five minutes or so, Ms. Mapes called her daughter in a frazzled state, concerned that he might attempt to break in.  She relayed real-time updates to her daughter on the unwanted visitor's movements: he searched under the flowerpots on the porch; he wandered around Ms. Mapes' car, pulling the door handle to see if it would open; he stared into the windows of her car; he came back and rang the doorbell several more times; and finally, he returned to his own car (parked in Ms. Mapes' driveway) and drove across the street into a neighbor's driveway.  At some point during this phone conversation, Ms. Mapes' daughter received a third call via call-waiting, informing them that another neighbor had called the police, who were en route to investigate.

{¶3}    Officers from the Colerain Township Police Department arrived and found Mr. Strietelmeier sitting in his car, still parked in the neighbor's driveway.  Mr. Strietelmeier told the officers that he was looking for "Brandy's" house, because his

2

girlfriend Donna directed him to go to Brandy's and pick up a surprise. The officers advised him that no one named Brandy lived there, and that he should not to return to the property. Mr. Strietelmeier apparently inquired about whether Brandy might live across the street at the Mapes' address, and the officers responded that they did not know who lived there but it was not Brandy. The officers did not speak with Ms. Mapes before or after sending Mr. Strietelmeier home, and this initial interaction was not captured on the body-worn video camera.

{¶4} Around 2:15 a.m., the same man returned to Ms. Mapes' home and again started ringing the doorbell. This time, Ms. Mapes immediately called 9-1-1 and rushed downstairs to wake up her husband. Ms. Mapes asked the 9-1-1 operator to send officers quickly because the stranger—now identified as Mr. Strietelmeier—was back, and he was peering through the glass, beating on the frame of the door, and jerking the door handle. The Mapeses watched out the window as Mr. Strietelmeier walked towards the rear of their home and disappeared behind a Penske box truck parked in their driveway. Officers arrived shortly thereafter and arrested Mr. Strietelmeier near the truck.

{¶5} This second incident was captured on the officer's body-worn camera. On the video, Mr. Strietelmeier told the officers that Donna became upset when he returned home earlier without the surprise from Brandy. Donna never gave Mr. Strietelmeier an exact address, but told him that Brandy supposedly lived just a few streets over from them in a house resembling his father's house. In an attempt to appease Donna, Mr. Strietelmeier made a second attempt at locating the elusive Brandy, and again zeroed in on the Mapes residence because it featured Spanish-type arches on the porch reminiscent of his father's house. He claimed to have walked

around back to see if Brandy might be having a party outside (despite the absence of party-related noise or fanfare), which might explain why she neglected to answer the door. Mr. Strietelmeier also told the officers that Donna kicked him out, and that he thought his father might have bought him the Mapeses house so he "could get my act cleaned up and get away from that loon."

{¶6} A jury found Mr. Strietelmeier guilty of criminal trespass, a fourth-degree misdemeanor under R.C. 2911.21(A)(1). The trial court sentenced him to 30 days in jail stayed, two years of probation, 200 hours of community service, and a $250 fine. On appeal, Mr. Strietelmeier contends in his sole assignment of error that the state failed to prove he committed the offense of criminal trespass beyond a reasonable doubt. We disagree and accordingly affirm the judgment.

II.

{¶7} R.C. 2911.21(A)(1) provides that "[n]o person, without privilege to do so, shall * * * [k]nowingly enter or remain on the land or premises of another." Mr. Strietelmeier asserts that the state failed to prove all the essential elements of criminal trespass, and as a result, the jury's verdict is against the manifest weight of the evidence. "A manifest-weight-of-the-evidence argument challenges the believability of the evidence." *State v. Staley*, 1st Dist. Hamilton Nos. C-200270, C-200271 and C-200272, 2021-Ohio-3086, ¶ 10. Only in exceptional cases will we reverse a jury verdict as being against the manifest weight of the evidence, "because 'the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.' " *State v. Hudson*, 1st Dist. Hamilton No. C-170681, 2019-Ohio-3497, ¶ 16, quoting *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). The jury "is free to believe or disbelieve all or any of the testimony." *Id.*

4

{¶8}   Mr. Strietelmeier does not dispute that he entered onto the Mapeses land.  But he challenges whether he did so "knowingly" and "without privilege."  "A person acts 'knowingly,' regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when the person is aware that such circumstances probably exist."  R.C. 2901.22(B).  Mr. Strietelmeier's knowledge " 'may be reasonably inferred from a combination of the victim's demeanor and others' interactions with the victim.' "  *State v. Jordan*, 1st Dist. Hamilton Nos. C-210198 and C-210199, 2022-Ohio-1512, ¶ 16, quoting *State v. Foster*, 2020-Ohio-1379, 153 N.E.3d 728, ¶ 48 (8th Dist.).  The state maintained that Mr. Strietelmeier knowingly entered the property without permission from the Mapeses, especially in light of the officers telling him during the first interaction that Brandy did not live there, thereby satisfying the statutory elements.

{¶9}   Mr. Strietelmeier refutes the notion that he knowingly arrived at the Mapeses house without permission because the police told him they didn't know who lived there (leaving open the possibility that it could be Brandy's house, which, in his view, would have accorded implied permission for him to enter the property), and because the police told him not to return to the neighbor's house but did not mention the Mapeses house.  This largely mirrors the rationale advanced by defense counsel during trial, with the added justification that Mr. Strietelmeier could not possibly know he was at the Mapeses home without permission because Ms. Mapes never instructed him to leave.

{¶10}  We are not persuaded.  To begin with, as to the "knowingly" element, "[n]o requirement exists that 'no trespassing' signs be posted on property, or that the

5

person in control or possession of property notify everyone in the world that they are not welcome to come onto the property." *State v. Janson*, 183 Ohio App.3d 377, 2009-Ohio-3256, 917 N.E.2d 296, ¶ 16 (1st Dist.).  Because "trespass is an invasion of the possessory interest in the property," the state was only required to prove that Mr. Strietelmeier knowingly entered land that was controlled by or in the custody of the Mapeses without their permission.  *Id.* at ¶ 12; *see* R.C. 2911.21(F)(2) (" 'Land or premises' includes any land, building, structure, or place belonging to, controlled by, or in custody of another, and any separate enclosure or room, or portion thereof.").  The law does not grant Mr. Strietelmeier an inherent right to be on land controlled by the Mapeses until or unless they affirmatively revoke that right.  To find otherwise would be an open invitation for anyone to enter any parcel of real property simply because the owner has not communicated a lack of privilege.

{¶11} Likewise, Mr. Strietelmeier's contention that he believed himself privileged to enter the property is without merit.  " 'Privilege' means an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity."  R.C. 2901.01(A)(12).  On this point, the best defense mustered by Mr. Strietelmeier was that Brandy invited Donna to come over, and that Donna transferred that permission to him.  But neither Donna nor Brandy showed up to testify about the source of confusion that night, and to this day, Mr. Strietelmeier remains unsure whether "Brandy" is an actual person.  Although some conflicting testimony emerged about whether officers told Mr. Strietelmeier not to return to the Mapeses specific address, the jury was free to believe or disbelieve either witness.

**{¶12}** After the initial unsuccessful entreaty to find Brandy at the Mapes' house in the middle of the night, a reasonable person should infer that no one named Brandy was awake in the vicinity and awaiting his arrival. "People are presumed to understand the reasonable and probable consequences of their actions." *State v. Lack*, 1st Dist. Hamilton No. C-200334, 2021-Ohio-2956, ¶ 20. Having been warned by the police that he was mistaken regarding Brandy's domicile, the natural and probable consequence of Mr. Strietelmeier's decision to return was his eventual arrest. The state presented sufficient evidence from which the jury could conclude that Mr. Strietelmeier lacked privilege to be on the Mapeses property, and we see nothing on this record to draw into question its decision. We are constrained to construe the evidence in favor of the jury verdict, and on this record, we defer to its determination that a greater amount of credible evidence supported the state's position. *See Houlihan v. Morrison*, 1st Dist. Hamilton Nos. C-200379 and C-200382, 2021-Ohio-3087, ¶ 23.

**{¶13}** Mr. Strietelmeier also testified that he may have been suffering from an untreated mental illness at the time which prevented him from fully comprehending the situation and realizing his mistake. While we are sympathetic to this possibility (which certainly seems plausible under the circumstances), his counsel did not request a competency evaluation prior to trial or present a defense based on mental illness. Because the defense never substantiated the point at trial or presented it to the jury, we decline to address it on appeal. Accordingly, Mr. Strietelmeier's conviction was not against the manifest weight of the evidence.

\*　　\*　　\*

**{¶14}** In light of the foregoing analysis, we overrule Mr. Strietelmeier's assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**ZAYAS, P. J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.