[Cite as *State v. Rivera*, 2026-Ohio-2209.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-250567 |
| | | TRIAL NO. B-2500014-A |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *JUDGMENT ENTRY* |
| LUIS ANGEL RIVERA, | : | |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 6/12/2026 per order of the court.**

**By:**_____
      **Administrative Judge**

[Cite as *State v. Rivera*, 2026-Ohio-2209.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                          :          APPEAL NO.    C-250567
                                                   TRIAL NO.     B-2500014-A
     Plaintiff-Appellee,             :

  vs.                                   :
                                                          *O P I N I O N*
LUIS ANGEL RIVERA,                      :

     Defendant-Appellant.            :


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: June 12, 2026


*Connie Pillich*, Hamilton County Prosecuting Attorney, and *John D. Hill, Jr.,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Timothy J. McKenna*, for Defendant-Appellant.

**MOORE, Judge.**

{¶1} Defendant-appellant Luis Angel Rivera was indicted on January 9, 2025, for second-degree felony aggravated trafficking in drugs and third-degree felony trafficking in cocaine in violation of R.C. 2925.03(A)(2), and second-degree felony aggravated possession of drugs and third-degree felony possession of cocaine in violation of R.C. 2925.11(A). Following a jury trial, Rivera was convicted of aggravated possession of drugs and possession of cocaine. He was acquitted of the trafficking charges. The trial court sentenced him to an aggregate indefinite four-to-six-year term in the Ohio Department of Rehabilitation and Correction.

{¶2} Rivera now appeals, arguing his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. Because the evidence shows that Rivera knew about the contraband that was found in his car, we affirm the trial court's judgment.

## I. Factual and Procedural History

### A. The Traffic Stop

{¶3} On December 31, 2024, Cincinnati Police Officers Henderson and Brown observed Rivera's Honda Accord with expired plates and heavy tint driving slowly on Henshaw Avenue in the Camp Washington neighborhood, a known drug-trafficking area. Officer Henderson activated his police lights. Rivera drove for approximately ten seconds before turning into the lot of a Shell gas station and parking at a pump. During the traffic stop, Rivera and his passenger—codefendant Maurice Wilson—were removed from the car so the K-9 unit could conduct an open-air sniff of the car.

{¶4} As Officer Henderson placed the handcuffs on Rivera, he informed Rivera that the K-9 alerted on the car. Rivera attempted to flee on foot (despite being

handcuffed) but fell face-first onto the pavement and was apprehended.

{¶5} Officers discovered 37.699 grams of methamphetamine and 10.615 grams of crack cocaine between the passenger seat and the door, plus five cell phones and $615 in cash in the middle console. The cash was made up of mostly $20 bills. Rivera told the officers that the money was from cashing his paycheck. The search also revealed that Wilson was carrying over $1000 in cash.

{¶6} Rivera was indicted alongside Wilson.[1] Rivera's matter proceeded to a jury trial.

### B. The Trial

#### 1. Officer Sean Henderson's Testimony

{¶7} Officer Henderson testified that he was working the "District 3 power shift" in Camp Washington with his partner, Officer Kyle Brown, when they initiated a traffic stop based on Rivera's car having excessively tinted windows and an expired license plate. Officer Henderson stated that the car was "slowly driving, idling down Henshaw Street, which is . . . dimly lit . . . in Camp Washington." He explained that it is an area where "we've made several arrests" and where drug traffickers "typically sell narcotics." Officer Henderson stated that Rivera's car was "extremely slow to stop" and it did not stop for "approximately a block and a half to two blocks."

{¶8} Officer Henderson explained that he asked the occupants to roll down their windows because he was unable to see through the window tint. He testified that he called for a K-9 unit due to the "totality of the circumstances," including the area Rivera was driving in, that he was slow to stop after the police lights were activated, and the "extreme[]" nervousness of both occupants of the car as exhibited by their

---

[1] Wilson pleaded guilty to and was convicted of trafficking in cocaine.

"labored breathing" and "visibly shaking with their hands." Officer Henderson had Rivera and Wilson exit from the car so the K-9 could be deployed.

**{¶9}** Officer Henderson testified that Rivera and Wilson were detained after the dog alerted to the car, and that Rivera fled on foot while in handcuffs but was apprehended.

**{¶10}** Officer Henderson testified that he then searched the passenger side of Rivera's car and found "a bag of narcotics mixed with both crack cocaine and crystal meth." Officer Henderson testified that he was confident that the bag contained cocaine and methamphetamines based on his experience and training in narcotics and the way it was packaged. Officer Henderson identified the physical evidence and the lab report confirming the nature of the substances found.

**{¶11}** Officer Henderson testified that Rivera told the officers to look in the car because he thought that "there was something in there," which was why he attempted to run from police. Officer Henderson did add that Rivera later retracted those statements, saying that he did not know what was in the car. Officer Henderson also explained that Rivera told the officers that the $615 in cash that was found in the console and one of the five phones found belonged to him. Officer Henderson stated that, judging from the crumpled state of the bills, the cash appeared to be related to drug trafficking, and that having multiple phones is a further indication of trafficking.

**{¶12}** On cross-examination, Officer Henderson testified that Rivera and Wilson were in earshot when Officer Dean reported to Officer Brown that the dog alerted on the car. He stated that Rivera had been handcuffed and was about to be placed in the police car when he ran. Officer Henderson recalled Rivera telling him that the $615 in cash that was found in the console was from Rivera cashing his paycheck.

### 2. *Officer Kyle Brown's Testimony*

**{¶13}** Officer Brown testified that he was working patrol with his partner, Officer Henderson, when they both observed Rivera's car in the middle of the road. Officer Brown activated the police lights.

**{¶14}** Officer Brown stated that Rivera should have pulled over on Colerain Avenue instead of pulling into the Shell gas station. He explained that he told Rivera that he would be detained because the drug dog alerted on the car, and Rivera began to "tense up" and was "looking for an out." Brown's body-worn-camera ("BWC") footage was played, which showed Officer Brown informing Rivera that he was being detained while handcuffing him, and Rivera ran a short distance after being handcuffed but fell face-first onto the pavement.

**{¶15}** Officer Brown's testimony echoed that of Officer Henderson regarding the search of Rivera's car, and that they suspected Rivera and Wilson of drug trafficking based on the multiple cell phones and the amount of cash that they had on hand. Officer Brown testified that Rivera stated that the car belonged to his girlfriend and that the cash in the console was from his paycheck. Officer Brown, however, was dubious, given the crumpled state of the $20 bills.

**{¶16}** Officer Brown testified that he decided to charge Rivera due to the time of night when Rivera was driving, being slow to stop for officers, Rivera's and Wilson's nervousness, the K-9 hit on Rivera's car, and the crumpled-up cash found in the console, and because Rivera told the officers that he did not know Wilson, yet was driving Wilson around. He stated that Rivera's attempt to flee alone "was another guilty conscious thing" along with telling Officer Henderson to "just look in the vehicle, you'll find something."

### 3. *Rivera is Found Guilty of Possession and Aggravated Possession*

**{¶17}** At the conclusion of the testimony of the State's witnesses and admission of exhibits, Rivera moved an acquittal pursuant to Crim.R. 29. He asserted that the State presented no evidence to prove that he "had any contacts whatsoever with these drugs." The State responded that Rivera "appeared to have proceeds from drug [transactions] that he was in control over." The trial court denied the Crim.R. 29 motion.

**{¶18}** Rivera was convicted of aggravated possession of drugs and possession of cocaine. He was acquitted of the drug-trafficking charges. The trial court sentenced Rivera to an aggregate indefinite four-to-six-year prison term.

**{¶19}** This appeal followed. Rivera has raised two assignments of error challenging the weight and sufficiency of the evidence supporting his convictions.

## II. Analysis

### A. Sufficiency and Manifest Weight of the Evidence

**{¶20}** A challenge to the sufficiency of the evidence requires the reviewing court to determine whether the State satisfied its burden of production. *State v. Harper*, 2025-Ohio-2059, ¶ 12 (1st Dist.). To determine whether a conviction is supported by sufficient evidence, we "assess whether, construing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the necessary elements of a given crime to have been proved beyond a reasonable doubt." *State v. Rodriguez*, 2024-Ohio-5832, ¶ 8 (1st Dist.).

**{¶21}** When applying the manifest-weight standard of review, a reviewing court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest

miscarriage of justice that the judgment must be reversed, and a new trial ordered. *State v. Champion*, 2021-Ohio-4002, ¶ 14 (1st Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**{¶22}** "A manifest-weight-of-the-evidence argument challenges the believability of the evidence." *State v. Strietelmeier*, 2022-Ohio-2370, ¶ 7 (1st Dist.), quoting *State v. Staley*, 2021-Ohio-3086, ¶ 10 (1st Dist.). It concerns the plaintiff's burden of persuasion. *State v. Brown*, 2025-Ohio-2351, ¶ 17 (1st Dist.). The trier of fact is in the best position to judge the credibility of the witnesses; thus, we afford substantial deference to the trier of fact's credibility determinations. *Id*.

**{¶23}** A conviction may be reversed on a manifest-weight review only in exceptional cases where the evidence weighs heavily against the conviction. *Id*. A conviction is not against the manifest weight of the evidence simply because the fact finder believed the prosecution's testimony. *Id*. Thus, a defendant is not entitled to a reversal on manifest-weight grounds merely because inconsistent evidence was presented at trial; the trier of fact is free to believe some, all, or none of any witnesses' testimony. *State v. Ridley*, 2022-Ohio-2561, ¶ 25 (1st Dist.).

*1. Rivera Constructively Possessed the Contraband*

**{¶24}** R.C. 2925.11(A) provides, "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." R.C. 2925.01(K) defines "possession" as "having control over a thing or a substance but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

**{¶25}** Possession may be actual or constructive. *State v. Rainey*, 2023-Ohio-4666, ¶ 32 (1st Dist.), citing *State v. Hankerson*, 70 Ohio St.2d 87, 91 (1982), syllabus. Constructive possession may exist when an individual, conscious of an object's

presence, "is able to exercise dominion and control over an item, even if he does not have immediate physical possession of it." *Id.* at ¶ 33, quoting *State v. Devaughn*, 2020-Ohio-651, ¶ 32 (1st Dist.), citing *Hankerson* at the syllabus. As this court has held, constructive possession can be established with "evidence that a defendant was both aware of the presence of illegal drugs and had the power to control them." *Id.*, quoting *Cincinnati v. Stirsman*, 322 N.E.2d 282, 283 (1st Dist. 1974). Constructive possession also exists when a person exercises or has the power to exercise dominion and control over a known object—even if the defendant did not have physical contact with it. *Id.* at ¶ 34. Circumstantial evidence is sufficient to establish dominion and control over an object. *State v. Thomas*, 2003-Ohio-1185, ¶ 9 (1st Dist.).

{¶26} Based on the totality of the circumstances, the State presented sufficient evidence to support Rivera's convictions for aggravated possession of drugs and possession of cocaine. The officers were dubious about the true origin of the $615 found in the middle console of Rivera's car, as it was "crumpled" or "crinkled," consistent with the appearance of cash used in drug-trafficking transactions, and multiple phones were found in the car. Rivera claimed not to know Wilson yet chose to drive Wilson around in an area known for drug trafficking.

{¶27} Although Rivera was the driver and the contraband was found tucked between the passenger seat and door, the State did not have to show that Rivera had physical control over the drugs. Officers testified that Rivera told them that he knew something was in the car, which was the reason Rivera said he ran after being handcuffed. The State presented sufficient evidence that Rivera knew of the contraband in his car, and therefore, that he constructively possessed it. *See Thomas* at ¶ 10 (constructive possession can exist when drugs are found in a vehicle, even when the defendant is not the only person in the vehicle); *State v. Mitchell*, 2002 Ohio

App. LEXIS 1706, *7-8 (8th Dist. Apr. 18, 2002) (the defendant-driver had three passengers, but was convicted of possession because police recovered a PCP cigarette from the front seat on the passenger's side and defendant-driver stated that the passengers were sharing the cigarette); *State v. Murrell*, 2003-Ohio-2068, ¶ 17-19 (1st Dist.) (defendant-driver constructively possessed the cocaine found in the trunk of the car he was driving as defendant was frequently permitted to borrow the car, $1000 in cash was found in the trunk along with the cocaine, and the cash found in the trunk was secured with a black rubber band in the same fashion as the cash found in the paper bag behind the driver's seat, which defendant admitted to owning).

{¶28} Rivera had made statements to the officers that he knew there was contraband in his car. The jury found the officers' testimony credible. The record contains nothing to suggest that the jury lost its way.

{¶29} Rivera's first and second assignments of error are, therefore, overruled.

### III. Conclusion

{¶30} Rivera's statement to police showed that he knew of the contraband in his car, which means that he constructively possessed it. Accordingly, his convictions were supported by sufficient evidence and were not against the manifest weight of the evidence. The trial court's judgment is affirmed.

Judgment affirmed.

**KINSLEY, P.J.,** and **ZAYAS, J.,** concur.